(96 Misc. Rep. 289)

### ROCHE v. ST. JOHN'S RIVERSIDE HOSPITAL.

(Supreme Court, Special Term, Westchester County.   July 8, 1916.)

1. **NEGLIGENCE** ⬡⇒7—**DUTY OF CARE OF CHILD.**

    A person receiving an infant of tender years in charge, gratuitously or otherwise, owes him the legal duty of due care to prevent injury to him.

    [Ed. Note.—For other cases, see Negligence, Cent. Dig. § 9; Dec. Dig. ⬡⇒7.]

2. **HOSPITALS** ⬡⇒7—**CONTRACT TO CARE FOR CHILD—BREACH.**

    A hospital, which permitted a four months old child to come in contact with a steam pipe, causing death, while the child's mother was undergoing treatment, broke its express contract to receive the child under its care and safeguard him while his mother was being treated.

    [Ed. Note.—For other cases, see Hospitals, Cent. Dig. § 13; Dec. Dig. ⬡⇒7.]

3. **HOSPITALS** ⬡⇒7—**AUTHORITY TO CONTRACT TO CARE FOR INFANT.**

    A hospital, authorized to receive patients and make contracts to that end, had authority to receive and undertake to care for an infant needing its mother's care, while she was undergoing treatment.

    [Ed. Note.—For other cases, see Hospitals, Cent. Dig. § 13; Dec. Dig. ⬡⇒7.]

4. **CHARITIES** ⬡⇒40—**CHARITABLE HOSPITAL—POWER TO CONTRACT.**

    A hospital operated as a charity has power to contract with an infant and his parents to care for the child and safeguard him while his mother is undergoing treatment in the hospital.

    [Ed. Note.—For other cases, see Charities, Cent. Dig. § 100; Dec. Dig. ⬡⇒40.]

5. **CHARITIES** ⬡⇒45(2)—**CHARITABLE HOSPITAL—NEGLIGENCE OF PHYSICIANS AND NURSES.**

    There is a rule exempting charitable hospitals from liability for the negligent acts of their physicians and nurses.

    [Ed. Note.—For other cases, see Charities, Cent. Dig. § 103; Dec. Dig. ⬡⇒45(2).]

6. **DEATH** ⬡⇒13—**BY WRONGFUL ACT—RIGHT OF ACTION—STATUTE.**

    Under Code Civ. Proc. § 1902, giving a right of action to the executor or administrator for death by "wrongful act, neglect, or default," where an infant was placed in a hospital under the latter's contract to care for him while his mother was receiving treatment, and was burned by contact with a steam pipe so that he died, a right of action arose, since an administrator may maintain an action under the statute if the wrongful act is such as would have given decedent a right of action, had he survived; it being immaterial whether it rests in tort or contract.

    [Ed. Note.—For other cases, see Death, Cent. Dig. § 48; Dec. Dig. ⬡⇒13.]

7. **CONTRACTS** ⬡⇒326—**RIGHT OF ACTION—BREACH OF CONTRACT.**

    A cause of action exists in favor of an injured party, who survives, where the injury was occasioned by a breach of contract, express or implied.

    [Ed. Note.—For other cases, see Contracts, Dec. Dig. ⬡⇒326.]

8. **DEATH** ⬡⇒7, 10—**RIGHT OF ACTION AT COMMON LAW.**

    It was a rule of the common law that no action for personal injuries resulting in death survived the death of the party injured, and that no right of action for causing death existed.

    [Ed. Note.—For other cases, see Death, Cent. Dig. § 10; Dec. Dig. ⬡⇒ 7, 10.]

---

⬡⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. DEATH ⬦—18(1)—BY WRONGFUL ACT—CHARACTER OF ACTION—STATUTE.

    An action for a wrongful death, under Code Civ. Proc. § 1902, is to recover the pecuniary value of a decedent's life to his next of kin.

    [Ed. Note.—For other cases, see Death, Cent. Dig. § 20; Dec. Dig. ⬦—18(1).]

Action by Cornelius G. Roche, as administrator of the goods, etc., of David Roche, deceased, against the St. John's Riverside Hospital. On defendant's demurrer to the first cause of action in the complaint. Demurrer overruled.

Finn & Nolan, of Yonkers, for plaintiff.
Reevs & Scrugham, of Yonkers, for defendant.

YOUNG, J. The defendant has demurred to the first cause of action set forth in the complaint for insufficiency. The substance of the cause of action, as alleged, is a breach of a contract made by the defendant with the parents of plaintiff's intestate, an infant less than four months old, to receive the infant under its care, and to watch, protect, and safeguard him, and exercise over him the constant, watchful surveillance and scrutiny which his tender age and helplessness required to the end, promised by the defendant, that the said baby should be restored safe and sound to his mother upon the completion of a course of treatment of the mother, for which she had also been received in the defendant's hospital. The breach of such contract, as alleged, was in the failure and refusal of the defendant to care for and protect the infant and exercise a constant watchfulness, etc., over him, whereby the head of the said infant was suffered or allowed by defendant to come into contact with a steam pipe of defendant's heating system and to so remain for a long time, and until the skull and brain of the infant were so badly burned that he died on January 8, 1916. The plaintiff is the father of the infant, and brings the action as administrator of his estate under the statute. The complaint also contains a second cause of action, which is founded upon the negligence of the defendant arising out of the same facts. The latter cause of action is not attacked.

[1-3] The questions presented by this demurrer are: Whether it was within the power of the defendant to make the contract alleged in the complaint, and whether it can be maintained under the statute, section 1902 of the Code of Civil Procedure. If the contract in question is to be construed as guaranteeing that no harm should come to the infant, it was clearly ultra vires; but no such construction is necessary. The fair intendment of the allegations of this cause of action is to allege a contract to receive the infant and exercise over it careful supervision and watchfulness in order that it might not suffer harm. It may be urged that this was no more than the measure of the defendant's legal duties to the infant, and it is true that, having received the infant under its care, its legal duty and the duty under its contract were coincident. One who receives an infant of tender years under his charge, either gratuitously or otherwise, owes him the legal duty of due care to prevent injury to him; but the defendant was not bound

to receive him and did not receive him gratuitously. Its contract, based upon a valuable consideration, was to receive him and give him the care which his tender age required. Until it had received him under this contract, it owed him no legal duty. It would seem reasonably plain, therefore, that there could be no breach of its legal duty, except by a breach of its express contract, and it seems to me, therefore, that the acts complained of constituted a breach of an express contract. The defendant was, in my opinion, authorized to make such a contract. It was a hospital, and as such authorized to receive patients and to make contracts to that end, and as an incident to that power it had authority to receive and care for an infant needing its mother's care while she was undergoing treatment at such hospital. At all events, the first cause of action alleged in the complaint discloses no facts showing any want of authority in the defendant to make the contract in question. It does not even appear that it was a charitable institution; the allegation in the complaint being simply that it was a domestic corporation.

The plaintiff relies upon the case of Ward v. St. Vincent's Hospital, 78 App. Div. 317, 79 N. Y. Supp. 1004, to sustain this cause of action. That case was based upon an alleged contract by the plaintiff with the defendant, a charitable hospital, by which the defendant agreed to furnish the plaintiff with a skillful, trained, and competent nurse for a stipulated sum per week, but failed so to do, and, on the contrary, furnished one unskilled and inexperienced, who placed an unprotected hot water bag against plaintiff's leg while she was under the influence of ether, whereby she was severely burned. Upon the trial of this case the court directed a verdict in favor of defendant and thereafter denied a motion to set aside such verdict and for a new trial. 23 Misc. Rep. 91, 50 N. Y. Supp. 466. The trial court held that the action was in tort, and not upon contract, and that the hospital was only liable for negligence in the original selection of its servants, and, having fulfilled that duty, was not liable for the subsequent act of such a servant, unless knowledge of her unfitness had been brought home to the corporation, and that this rule was applicable to all patients, whether they paid or not. The Appellate Division of the First Department (39 App. Div. 624, 57 N. Y. Supp. 784) reversed this judgment and granted a new trial, holding that the contract in question was not ultra vires, and that the question whether the defendant had fulfilled its contract was for the jury. Upon the second trial the plaintiff recovered a verdict for $10,000, which was reversed upon appeal for error in the charge, and a new trial granted. Upon the third trial plaintiff recovered a verdict for $19,420, but the judgment based upon this verdict was again reversed for errors in the exclusion of evidence and refusals to charge. Upon the first appeal in the case last cited, the court, in discussing the question as to whether the action was founded on contract or in tort, discussed at some length the allegations of the complaint, pointing out that in form they clearly set forth a contract and alleged its breach, and then used the following language:

"The learned judge here applied by analogy the ordinary rule in actions against carriers. That rule, however, permits the injured passenger to main-

tain an action, either in contract or in tort, at his election; that is, either what was formerly assumpsit for the breach of the contract, whether express or implied, or on the case for the wrong. In the present case the contract was express. It settled all questions of general duty attached by law, and became the criterion of the defendant's specific duty in this particular case. And it was a contract which the defendant certainly had power to make. Though the defendant is what is termed a charity hospital, it has its 'pay' side. Upon the latter side it was in the habit of furnishing private rooms and nurses to well-to-do people for a full price. For the breach, then, of that express specific and valid contract, the plaintiff was entitled to the same damages as though the action had been for negligence pure and simple. In either case she was entitled to compensation; that is, to an adequate indemnity for her injuries, no more and no less." 39 App. Div. 625, 626, 57 N. Y. Supp. 784.

Upon the last appeal the court said:

"As an original proposition, I should very much doubt whether Sister Ignatius, giving to the plaintiff's testimony all that could be claimed from it, had the power to make the contract alleged, even if the defendant itself—a charitable institution—could have done so [citing numerous cases]. The law, however, has been settled otherwise by this court and that is now the law of the case." 78 App. Div. 320, 79 N. Y. Supp. 1004.

[4, 5] Under the authority of the Ward Case, therefore, it is apparent that, even if we assume the defendant here to be a charitable institution, the complaint sets forth a contract between the defendant and the deceased and his parents which was within the power of the hospital to make. I do not find that the Ward Case has ever been overruled. On the contrary, it has been cited with approval upon a different point in Schloendorff v. New York Hospital, 211 N. Y. 125, 132, 105 N. E. 92, 52 L. R. A. (N. S.) 505, Ann. Cas. 1915C, 581, where the rule of exemption of charitable hospitals from liability for the negligent acts of its physicians and nurses is thoroughly discussed. The rule of exemption, however, as pointed out in the Ward Case, has no application here.

The case of Duncan v. St. Luke's Hospital, 113 App. Div. 68, 98 N. Y. Supp. 867, affirmed without opinion 192 N. Y. 580, 85 N. E. 1109, does not, in my opinion, alter the principle laid down in the Ward Case, supra. In that case a husband sued the hospital, alleging a special contract to watch over his insane wife, and a breach of such contract, whereby she threw herself out of a window and was killed. It was held that the action could not be maintained, but the real point of the decision in that case was that the husband sued, not under the statute, but for loss of the services of his wife by reason of the breach of the contract, and the court properly held that no such right of action survived her death. It is true that the opinion contains expressions which are apparently at war with the doctrine laid down in the Ward Case, and hold that the action was not upon the contract, but was founded in tort; but these expressions were directed, I think, to the peculiar form in which the action was brought, and were not intended to overrule the Ward Case, which is not cited.

The case of Cunningham v. Sheltering Arms, 61 Misc. Rep. 501, 115 N. Y. Supp. 576, affirmed 135 App. Div. 178, 119 N. Y. Supp. 1033, cited by the defendant has no application to the case at bar.

The point involved in that case was the exemption from liability of the defendant, a charitable institution, for injuries to a recipient of its charity. No such question is presented here. Furthermore, the court in that case expressly distinguished it from the Ward Case, saying that in the latter case the defendant's liability, if any, rested upon its special contract with the plaintiff, and not upon a tort.

[6, 7] In my opinion, also, the cause of action demurred to can be maintained under the statute, section 1902 of the Code of Civil Procedure. That section provides:

"The executor or administrator duly appointed in this state * * * of a decedent who has left him or her surviving a husband, wife, or next of kin, may maintain an action to recover damages for a wrongful act, neglect or default, by which the decedent's death was caused, against a natural person who, or a corporation which, would have been liable to an action in favor of the decedent by reason thereof if death had not ensued."

It is contended by the defendant in substance that an action cannot be maintained on a contract to recover damages for the death of a decedent resulting from a breach of a contract, and that the only action maintainable is that provided for by section 1902 of the Code. The Duncan Case is cited as authority for this proposition. I have already pointed out the distinction between that case and the case at bar. That case was concededly not brought under the statute. The case at bar, however, is plainly intended to be within the statute.

The case of Lichtenstern v. Augusta-Aiken Railway, etc., 165 App. Div. 270, 150 N. Y. Supp. 992, cited by defendant, has no bearing upon this case. There the plaintiff sued defendant under a Georgia statute to recover damages for the death of her deceased husband by reason of its failure to supply a sufficient number of guards to protect the decedent while employed on its road during a strike. It was held that the complaint was insufficient in not alleging defendant's failure to use reasonable care to protect the deceased, and that, although it was alleged that defendant agreed that decedent would be protected and saved harmless from loss, etc., its failure to perform this contract did not in itself constitute negligence, and that the mere breach by defendant of its contract obligation could not be made the basis of an action in tort for the decedent's death.

I do not think that either of these authorities intend to lay down the doctrine that an action cannot be maintained for wrongfully causing death where the wrongful act arises from the breach of a contract, express or implied. A cause of action exists in favor of an injured party who survives, where the injury was occasioned by the breach of such a contract. See Busch v. Interborough R. T. Co., 187 N. Y. 388, 80 N. E. 197, 10 Ann. Cas. 460; Ward v. St. Vincent's Hospital, supra. It is apparent, therefore, that, had the plaintiff's intestate in this case survived his injuries, an action could have been maintained in his behalf for his injuries, founded upon the breach of the express contract alleged in the complaint.

[8, 9] In considering this contention of the defendant, it is necessary to notice briefly the nature of the right of action given by the present statute, which is substantially a re-enactment of former stat-

utes in existence in this state since 1847. It was a familiar rule of the common law that no action for personal injuries resulting in death survived the death of the party injured and that no right of action for causing such death existed. The statute was intended, not to abrogate the common-law rule that the right of action for personal injuries did not survive decedent's death resulting therefrom, but to create a new cause of action for the pecuniary injury to his next of kin, resulting from his death through the wrongful act of another. One test of the right to maintain such an action was the right of the decedent to have maintained an action for the injury, had death not ensued. It is not an action for the damages which would have resulted to the decedent, either for a tort or for the breach of a contract between the wrongdoer and the decedent, by reason of which death resulted, because in such a case the recovery and the elements of damages would be of an entirely different nature, which could not survive his death. It is, concisely stated, an action to recover the pecuniary value of a decedent's life to his next of kin. It is of no importance, then, to determine the precise nature of the right of action which the decedent would have had if he had survived, whether resting purely in tort, on contract, or of such a nature as to be maintainable either ex delicto or ex contractu. If the wrongful act gave decedent a right of action, had he survived, his administrator may maintain an action under the statute for his death.

In this case it was important to set forth the contract and its breach, in order to measure defendant's duty and liability to decedent, and thus test his administrator's right to maintain the action under the statute. In other words, the question presented here is: Would the alleged wrongful act, neglect, or default of defendant have rendered it liable to decedent, had death not ensued? If so, the action is maintainable; otherwise, not. I conclude, therefore, that the first cause of action alleged in the complaint in this action is to recover the damages sustained by decedent's next of kin, resulting from his death, caused by defendant's wrongful act or omission in violating its express contract to diligently guard decedent from harm, and that such a cause of action can be maintained.

The demurrer is therefore overruled, with leave to the defendant to answer within 20 days on payment of costs.